**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**33 SEMINARY LLC, 31 SEMINARY LLC, and**
**26 SEMINARY AVENUE PROJECT LLC,**

                                **Plaintiffs,**

   **vs.**                                                    **3:11-CV- 1300**
                                                                  **(MAD/DEP)**

**THE CITY OF BINGHAMTON, MATTHEW T.**
**RYAN, Individually and as Mayor of Binghamton,**
**KENNETH J. FRANK, Individually and as Corporation**
**Counsel of the City of Binghamton, THOMAS COSTELLO,**
**Individually and as Supervisor of Building and Construction**
**and Code Enforcement for the City of Binghamton, DAVID S.**
**CHADWICK, Individually and as Former Supervisor of**
**Building and Construction for the City of Binghamton, KEVIN**
**ESWORTHY, Individually and as former Building Inspector**
**of the City of Binghamton, JOHN STELLA, Individually and as**
**Chairman of the Planning Commission of the City of Binghamton,**
**MARK YOUNG, Individually and as Member of the Planning**
**Commission of the City of Binghamton, MICHELLE O'LOUGHLIN,**
**Individually and as Member of the Planning Commission of the City**
**of Binghamton, ROBERT POMPI, Individually and as Member**
**of the Planning Commission of the City of Binghamton, THOMAS**
**POLLACK, Individually and as Member of the Planning Commission**
**of the City of Binghamton, EARL WALKER, Individually and as**
**Member of the Planning Commission of the City of Binghamton,**
**JAMES WORHACH, Individually and as Member of the Planning**
**Commission of the City of Binghamton, KELLY LIGEIKIS, Individually**
**and as Member of the Planning Commission of the City of Binghamton,**
**JOANN MASTRONARDI, Individually and as Chairman of the**
**Zoning Board of Appeals of the City of Binghamton, VLADIMYR**
**GOUIN, Individually and as Member of the Zoning Board of Appeals**
**of the City of Binghamton, DONALD HANRAHAN, Individually**
**and as Member of the Zoning Board of Appeals of the City of**
**Binghamton, CARMAN GARUFI, Individually and as Member**
**of the Zoning Board of Appeals of the City of Binghamton, GERALD**
**O'BRIEN, Individually and as Member of the Zoning Board**
**of Appeals of the City of Binghamton.**
                                **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

COHEN LAW GROUP, PC.                    Brian S. Cohen, Esq.
10 East 40th Street - 46th Floor
New York, New York 10016
*Attorneys for Plaintiffs*

CITY OF BINGHAMTON
CORPORATION COUNSEL                     Brian M. Seachrist, Esq.
38 Hawley Street
City Hall
Binghamton, New York 13901
*Attorneys for Defendants*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

Plaintiffs, property owners in the City of Binghamton, commenced this action pursuant to

42 U.S.C. § 1983 alleging that defendants violated their rights under the United States

Constitution.  Presently before the Court is defendants' motion to dismiss plaintiffs' complaint

pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). (Dkt. No. 27).  Plaintiffs have opposed the

motion. (Dkt. No. 32).

## BACKGROUND[1]

Plaintiffs are New York Limited Liability companies ("LLCs").  Isaac Levin ("Levin") is

the managing member of the LLCs.   In 2007, 2008 and early 2009, plaintiffs purchased

properties at 26 Seminary Avenue (July 11, 2007), 33 Seminary Avenue (July 2008) and 31

Seminary Avenue (January 30, 2009) in the City of Binghamton.  In 2008, plaintiffs converted 33

Seminary Avenue to five-bedroom units for college students.  Plaintiffs sought to convert the

remaining properties into "safe and upscale housing" for students attending the State University

of New York at Binghamton or Broome County Community College.

---

[1] The background information is taken from the complaint is presumed true for the purposes of this motion only.  This does not constitute a factual finding by the Court.

**Ordinance 009-009**

On March 16, 2009, the City Council adopted, and Mayor Matthew Young subsequently approved, Ordinance 009-009 ("Ordinance") which amended certain sections of Chapter 410 of the Code of the City of Binghamton ("City Code").   Chapter 410 is entitled "Zoning".   Article VI refers to Residential Districts.  Of relevance herein is Section 410.27(B) which provides:

> B.    R-2 Residential One- and Two-Unit Dwelling District.
>
> (1)    Permitted by right.
>        (a)    Principal uses:
>        Two-unit residences
>
> (3)    Permitted with Planning Commission approval (special use permit and Series A site plan).
>
>        (1)    Principal uses:
>        Conversion of dwelling Unit to More than Four Bedrooms

Article VIII is entitled, "Special Use Permit/Series A Site Plan Review Requirements".

Of relevance is Section 410.36 which provides:

> A.    Series A Site Plan approval from the Planning Commission pursuant to 410.39 of this Article VIII is required for all new construction, for all commercial uses, for all special permitted uses, for all principal permitted and accessory uses, for all changes of use, and as required by 410.27 or 410.29 of this Chapter.  No building permit shall be issued by the Building Inspector for any use which requires site plan approval except upon authorization of an in conformity with plans approved by the Planning Commission.
>
> B.    Exceptions.  Notwithstanding Subsection A of this section, no Series A Site Plan approval is required for: (i) single- and two-family dwellings and accessory uses thereto, except as may be required by 410.27 or 410.29 of this Chapter, or (ii) any change of use from one principal permitted or accessory use to another principal permitted or accessory use, including changes of use within a permitted multiple use, e.g. a shopping center, and where no exterior alterations or additions are proposed, provided the Planning Department and Building

Inspector determine that the proposed change of use will not have any significant impact on:

1. Traffic volume
2. Site access
3. On-site and off-site parking
4. Internal circulation
5. Neighborhood noise levels
6. Green space (The proposed project will not have created a need for additional landscaping, screening, or buffering)
7. Drainage
8. Character of the neighborhood
9. Lighting

The list of items to be considered above is inclusive, but not exclusive, and the Planning Department and Building Inspector may consider any environmental or development issues that would have a significant impact on the parcel and/or the surrounding area.

**Applications for 31 Seminary Avenue[2]**

On April 30, 2009, plaintiffs submitted a Building Permit Application ("Building Permit Application") to convert the one-unit dwelling to a two-unit dwelling with four bedrooms. Plaintiffs filed the required site plan and floor plan.   Simultaneously, plaintiffs submitted an application to the Planning Commission ("Planning Commission Application"), pursuant to the Ordinance, for approval to construct a two-family home with five bedrooms per unit.  Plaintiffs also submitted an application to the Zoning Board for a variance ("Variance Application") for a parking lot to provide parking for ten cars.[3]

---

[2] From April 2009 through May 2010, plaintiffs allegedly submitted several permit applications for renovations at 31 Seminary Avenue.  In response, plaintiffs claim that they received written correspondence and/or denials from defendants.  The record does not include any documentation regarding the applications or denials.  All of the information relating to the applications and denials is taken from the parties pleadings and submissions on the motion.  The Court has summarized the alleged applications and denials for the purposes of establishing a timeline of events and background only.

[3] Defendants do not dispute that the applications were filed.

After the Building Permit Application was submitted, plaintiffs allege that the following events occurred:

- On May 5, 2009, defendant Supervisor Chadwick ("Chadwick") told Levin that the Building Permit was denied because the change of occupancy from a one-unit to a two-unit dwelling was deemed a "change of use".

- On May 7, 2009, Levin hand delivered a letter to Chadwick and Corporation Counsel contesting the denial arguing that the change of occupancy was not a change of use and cited examples from other municipalities.

- On May 8, 2009, plaintiffs received a letter from Chadwick advising that the Building Permit Application had not yet been considered because Planning Commission approval was required due to the change of use.

- On May 8, 2009, Attorney Seachrist telephoned Levin to advise that the Building Permit Application would be approved if the renovation was changed from five bedrooms per dwelling to four bedrooms.

- Shortly thereafter, Levin had another conversation with Chadwick wherein Chadwick advised that only a permit to construct a one-unit dwelling with four bedrooms would be approved "as of right".

On May 14, 2009, plaintiffs submitted a modified permit application for the renovation of 31 Seminary Avenue providing for a one-unit dwelling with four bedrooms, two auxiliary rooms, one kitchen and parking for four vehicles ("Modified Application").[4]  Chadwick allegedly informed Levin that the Modified Application would be denied because there were other applications pending.  On May 26, 2009, plaintiff faxed a letter to the Planning Commission

---

[4] Defendants do not dispute that the Modified Application was submitted.

withdrawing all other applications.[5]   On May 26, 2009, plaintiffs claim they received written

correspondence denying the Modified Application.

Plaintiffs allegedly amended the modified permit application and resubmitted the floor

plan without the auxiliary rooms.  On June 3, 2009, the application was denied and plaintiffs

claim they were advised to amend their plans to demonstrate that a single-family residence was

being proposed.[6]

In June 2009, plaintiffs were issued a permit for work.[7]  On June 11, 2009, plaintiffs

allegedly submitted another application to convert the unit to a two-unit dwelling but claim the

application was denied on July 10, 2009.  On June 17, 2009, plaintiffs allegedly submitted an

application to convert 31 Seminary Avenue from a single-unit dwelling to a two-unit dwelling

with four bedrooms per unit.  By letter dated June 29, 2009, plaintiffs claim that Chadwick denied

the application classifying the proposed conversion as a change of use.[8]

On July 6, 2009, Inspector Esworthy appeared at 31 Seminary Avenue for an inspection of

the premises.  Plaintiffs allege that the inspection was unannounced and that Levin was not

present, had no knowledge of the inspection and did not consent to the inspection.  Esworthy

allegedly questioned the on-site workers about the work being performed.  Plaintiffs claim that

the only work being performed at the time was on the roof and exterior of the house.   Esworthy

issued a "red tag" and stopped work on the house.  Plaintiffs claim that the stop work order was

issued based upon statements of roofers who had no knowledge of plaintiffs' final plans for the

---

[5] Defendants do not dispute that the other applications were withdrawn but the letter is not part of the record herein.

[6] Defendants neither dispute nor confirm these applications/denials.

[7] The parties agree that a permit was issued but dispute the substance of the work permit.

[8] Defendants do not dispute nor confirm these applications/denials.

interior of the home.  Moreover, plaintiffs claim that the on-site workers had no authority to speak

for or represent plaintiffs.  As a result of the stop-work order, plaintiffs allegedly sustained over

$100,000.00 in damages.

On October 21, 2009, plaintiffs wrote to the Zoning Board asking for an interpretation as

to whether the proposed conversion of 31 Seminary Avenue was a change of "occupancy" or

"use".  Plaintiffs allegedly submitted the following documentation in their letter request: (a)

opinion from Cheryl Fischer, New York State Assistant Director for Code Interpretation; and (b)

the Code of the City of Albany.  On December 1, 2009, Levin appeared before the Zoning Board

on the application for an interpretation of change of "use" versus "occupancy".  The Board held

that the proposed conversion of 31 Seminary Avenue from a single-unit dwelling to a two-unit

dwelling was a change of use.[9]

On October 21, 2009, plaintiffs renewed their application to the Planning Board for a

change of occupancy for 31 Seminary Avenue from a one-unit to two-unit dwelling with a floor

plan providing for five bedrooms in each unit. On December 14, 2009, the Planning Commission

conducted a hearing regarding plaintiffs' October 21, 2009 application.[10]  Plaintiffs claim that

members of the Commission expressed concerns regarding the egress, exits, kitchen staircase and

windows and further, that Supervisor Costello was concerned that the change would cause the

property to be considered a dormitory.  The hearing was adjourned until January 4, 2010.[11]   Prior

to the next hearing, plaintiffs allegedly provided a memorandum from Cheryl Fischer, dated

December 16, 2009, wherein Ms. Fischer rejected the dormitory theory and stated that "the lease

---

[9]  The minutes of the various hearings are not part of the record herein.

[10] Defendants do not dispute that plaintiffs renewed their application or that a hearing was held.

[11] Defendants neither confirm nor dispute the sum and substance of the discussions during the hearings or the reasons for the adjournments.

of a two-family dwelling to students does not change the occupancy classification of a two-family dwelling to a dormitory".[12]

On January 4, 2010, the Planning Commission reconvened and examined plaintiffs' October 21, 2009 application.  Plaintiffs allegedly submitted various letters from the New York State Department of State in support of their application.  The hearing was adjourned until February 1, 2010 to investigate the "dormitory issue".  At the February 1, 2010 hearing, plaintiffs submitted a revised site plan for 31 Seminary but plaintiffs application was denied because a planned front vestibule did not have the required five-foot setback and no variance was sought.[13] On May 12, 2010, after restoring the vestibule, plaintiffs filed another application with the Planning Commission for the approval of a two-unit dwelling with five bedrooms per unit.   On June 7, 2010, July 19, 2010 and August 2, 2010, the Planning Commission held hearings regarding the May 17, 2010 application.   On August 2, 2010, plaintiffs' May 17, 2010 application was denied.  To date, 31 Seminary Avenue remains vacant.

**26 Seminary Avenue**

When plaintiffs purchased 26 Seminary Avenue, it was a three story building with commercial space on the ground floor, two apartments on the second floor and one apartment on the third floor.  Plaintiffs claim that they received building and electrical permits and were advised that they did not need a parking variance.  In 2008, plaintiffs undertook substantial construction on 26 Seminary Avenue and sought to convert the upper stories to single units with

---

[12] The memorandum is not part of the record herein.

[13] Plaintiffs allege that the reasons for the denial were expressed in an April 21, 2010 affidavit from Attorney Seachrist relating to the Article 78 proceeding.  The affidavit is not part of the record.  However, in defendants' motion, they concede, "the P.C.'s denial was partially based upon the plaintiffs' illegal expansion of a legal non-conforming entranceway at 31 Seminary Avenue.  The plaintiffs' had removed an existing entranceway that violated the setback requirements and replaced it with an entranceway that had no setback, thereby increasing the non-conformity."

three bedrooms each and to convert the commercial space to a residential unit with three bedrooms.  In early 2009, defendants revoked plaintiffs' permits for 26 Seminary.  On June 25, 2009, plaintiffs presented the Zoning Board with a plan to provide six parking spaces for 26 Seminary Avenue on the property at 31 Seminary Avenue.[14]

On January 5, 2010, Levin appeared before the Zoning Board on his application.[15]  The application was denied.  To date, 26 Seminary remains vacant.

**Broome County and Cortland County Petitions[16]**

    **1.**       **Broome County**

On July 24, 2009, plaintiffs 33 Seminary LLC and Issac Levin Individually, filed an Article 78 Petition in the Supreme Court of the State of New York, County of Broome. Petitioners claimed: (1) the Ordinance was ultra vires unconstitutional; (2) the properties named in the petition were not subject to the Ordinance; (3) that the review process mandated by the Ordinance constituted a "taking" in violation of the Fifth and Fourteenth Amendments; and (4) the city selectively enforced the Ordinance in violation of the Equal Protection Clause. Petitioners sought an Order declaring the Ordinance and all actions against petitioner illegal and

---

[14] The plan is not part of the record herein.

[15] Portions of the meeting minutes from the January 5, 2010 Zoning Board of Appeals Meeting were provided by defendants in reply to plaintiffs' opposition.  This document  was not annexed to plaintiffs' complaint and the copy provided by defendants is incomplete.  Thus, the Court will not consider the minutes in the context of the within motion.

[16] Defendants addressed the petitions in the motion to dismiss and annexed Court documents relating to both actions.  Plaintiffs' complaint is devoid of any reference to the petitions.  In response, plaintiffs annexed copies of the Decision and Orders in both actions.  The Court is permitted to take judicial notice of decisions in Article 78 proceedings.  *See DeMasi v. Benefico*, 567 F.Supp.2d 449, 457 (S.D.N.Y. 2008).  Thus, the Court will consider these documents in the context of the motion.  *Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts,* 369 F.3d 212, 217 (2d Cir. 2004) (citations omitted) (review of a motion to dismiss is generally limited to the facts and allegations in the complaint alone, the court may take judicial notice of public records, including complaints filed in State court).

directing the respondent to lift the stop work order and grant the applications.[17]  Petitioners also

sought $100,000.00 in damages.  On October 14, 2009, the Honorable Molly Reynolds Fitzgerald

issued a Decision and Order granting respondents' motion for dismissal.  Judge Reynolds

Fitzgerald dismissed the ultra vires argument finding that, "General City Law § 20, [ ] grants

cities the right to enact ordinances necessary to 'regulate the density of the population in any

given area'".  The Court also dismissed petitioners' arguments regarding the interpretation of

change of use because petitioners failed to seek Zoning Board of Appeals review, and thus, failed

to exhaust administrative remedies.  The Court dismissed the "takings" argument because

petitioners' failed to demonstrate confiscation and finally, the Court dismissed the equal

protection claims because petitioners' failed to show how they were similarly situated with others

who were not subject to the Ordinance.

### 2.   Cortland County

In March 2010, petitioners 33 Seminary LLC, 26 Seminary Avenue Project LLC and Isaac

Levin, commenced an Article 78 proceeding in the Supreme Court of the State of New York,

County of Cortland.  In the initial petition, petitioners allegedly asserted the following claims: (1)

a special permit and site plan are not required for the work at 31 Seminary Avenue; and (2)

respondents' denials were arbitrary and capricious.[18]  In April 2010, petitioners allegedly sought a

preliminary injunction.  That request was denied.  Petitioners then filed an amended petition.[19]  In

September 2010, petitioner moved for leave to file a Second Amended Petition to assert the

following claims: (1) that respondents denied petitioners equal protection by selective

---

[17] The issues regarding the stop-work order were subsequently resolved by the parties.

[18]  The initial petition is not part of the record herein.

[19] Petitioners' request for a preliminary injunction, the denial and the amended petition are not part of the record herein.

enforcement of the Zoning Ordinance; (2) the requirement that the project comply with an amendment made to the Zoning Ordinance after petitioner 33 Seminary LLC had acquired the property amounted to retroactive enforcement of the amended Zoning Ordinance which denied petitioners due process of law; (3) that the Ordinance is facially unconstitutional; and (4) that respondents' actions were arbitrary and capricious.  In the Second Amended Petition, petitioners sought an Order declaring the Ordinance unconstitutional pursuant to the Fifth and Fourteenth Amendments and an award of $155,680.00 in damages or, in the alternative, for an Order converting the action to one for declaratory judgment.

In October 2010, the Honorable Philip R. Rumsey issued a Decision, Order and Judgment. Judge Rumsey addressed the new claims asserted in plaintiffs' proposed amended petition. With regard to the due process claims, the Court held:

> The proposed due process claim lacks merit.  Petitioner 33 Seminary LLC acquired the property, located in an R-2 Residential One- and Two-Unit Dwelling District, on January 30, 2009.  In March 2009, the City of Binghamton enacted ordinance 009-006, which amended the Zoning Ordinance to expand the types of projects subject to Planning Commission review and approval.  In relevant part, for properties located in a R-2 district, it requires Planning Commission approval for conversion of a dwelling unit to more than four bedrooms, or construction of a structure with dwelling units with more than four bedrooms.  The amendments - dated March 2, 2009 - became effective on March 22, 2009.  Petitioners have admitted that they did not apply for any permits required to commence renovation of the property until April 2009 - after the Zoning Ordinance was amended.  Therefore, they had no vested rights that were affected by the amendments, which were properly applied to the project.

The Court also analyzed petitioners' new claim that respondents arbitrarily denied petitioners' May 17, 2010 application for a special use permit/Series A site plan.  The Court noted that the denial was filed on August 12, 2010, thus, the Article 78 proceeding challenging the denial was required to be commenced within 30 days.  The Court held, "it does not appear that a

separate Article 78 proceeding was timely commenced on or before September 11, 2010.

Moreover, . . . the motion to amend was not timely because it was not filed until September 29,

2010 - more than 30 days after the Planning Commission decision was filed with the City Clerk."

The Court dismissed this proposed claim as time barred.

Judge Rumsey examined petitioners' equal protection claim and concluded that the

Second Amended Petition contained sufficient allegations to plead a *prima facie* case of selective

enforcement:

> It contains facts which, if proven, would allow a conclusion that the
> properties located at 46 Seminary Avenue and 63 Front Street are, at
> least, "roughly equivalent" to petitioners' properties at 26 Seminary
> Avenue and 31 Seminary Avenue and that their owners received
> permits or variances denied to petitioners.

The Court also resolved the remaining issues.  With respect to petitioners' application to

convert 31 Seminary Avenue to a two-family dwelling with five bedrooms, the Court held:

> Respondent has determined that the project is subject to site plan
> review for two reasons: (1) because it involves a change of use, from
> a single-family dwelling to a two-family dwelling; and (2) because it
> involves a conversion of an existing dwelling unit to increase the
> number of bedrooms to more than four.   Petitioners [ ] then
> commenced an Article 78 proceeding on July 24, 2009, which was
> dismissed by decision and order dated October 14, 2009.

With respect to petitioners' claims regarding the Zoning Board's interpretation of change

of use versus change of occupancy, the Court found:

> The minutes of the meeting of December 1, 2009 at which the ZBA
> determined that such a change constitutes a change of use were filed
> with city clerk on February 3, 2010.  The challenge to the ZBA's
> determination is time-barred, because this proceeding was not
> commenced until March 10, 2010 - more than 30 days after the
> decision was filed.

The Court made the same determination with respect to petitioners' December 7, 2009

application for a variance regarding off-street parking.  Specifically, the Court found, "[a]

decision of the ZBA denying the variance was filed on January 13, 2010 - more than 30 days prior to commencement of this proceeding".

With respect to petitioners' November 4, 2009 application for a special use permit/Series A site plan approval, the Court noted that the Planning Commission denied that application on February 1, 2010 and a written decision was filed on February 8, 2010.  Therefore, petitioners' challenge to that determination was "timely" because the within proceeding was commenced on the 30th day after the decision was filed.  Nonetheless, the Court found that respondents properly denied the application because petitioners failed to establish that the property complied with the applicable front-yard set back requirement.

In conclusion, the Court granted petitioners' motion to amend to assert a claim for damages and attorneys' fees based on selective enforcement.  The Court also converted the proceeding to a civil action pursuant to CPLR § 103(c) .  The Court further held:

> All other claims, causes of action and demands for relief, whether asserted in the petition, amended petition or the second amended petition - are hereby dismissed with prejudice.  Accordingly, the only claim remaining at issue in this action is the selective enforcement claim.

## DISCUSSION

On November 2, 2011, plaintiffs commenced the within action alleging that defendants violated plaintiffs' substantive and procedural due process rights and equal protection rights under the Fourteenth Amendment.  Plaintiffs also claim that the Ordinance is unconstitutional and "void for vagueness".  Plaintiffs seek monetary relief and a declaratory judgment. (Dkt. No. 1).

On January 13, 2012, defendants moved to dismiss plaintiffs' complaint on the following grounds: (1) plaintiffs' procedural and substantive due process claims are barred by the doctrine of collateral estoppel; (2) plaintiffs' procedural due process claim should be dismissed due to the

availability of an Article 78 proceeding; (3) the Ordinance is not vague; (4) res judicata bars plaintiffs' void for vagueness claims, due process claims and plaintiffs' request for declaratory judgment; and (5) plaintiffs failed to state a claim for denial of equal protection.  In the alternative, defendants argue that this Court should abstain from hearing this matter based upon the *Younger* doctrine.  (Dkt. No. 27)

## I.      Standard on a Motion to Dismiss under 12(b)(6) and 12(b)(1)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)).  The court may consider matters of public record in deciding a 12(b)(6) motion.  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).  Moreover, the Court may take judicial notice of provisions of a Town or City Code and decisions on Article 78 proceedings.  *See Missere v. Gross*, 2011 WL 6030665, at *5 (S.D.N.Y. 2011).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," see Fed. R. Civ. P. 8(a) (2), with sufficient facts "to 'sho[w] that the pleader is entitled to

relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this

standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the

speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on

[their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but

it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at

1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement

to relief ' ". *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a

complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at

558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to

plausible, the [ ] complaint must be dismissed[.]" *Id.* at 570.

      Defendant also moves for dismissal pursuant to Fed.R.Civ.P. 12(b) (1) for lack of

jurisdiction. In contemplating a motion to dismiss for lack of subject matter jurisdiction pursuant

to Rule 12(b)(1), the Court must "accept as true all material factual allegations in the

complaint[.]" *Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992).

The Court may consider evidence outside the pleadings, e.g ., affidavit(s), documents or

otherwise competent evidence. *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d

Cir.1986); *Antares Aircraft v. Fed. Rep. of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991). As the party

"seeking to invoke the subject matter jurisdiction of the district court", plaintiff bears the burden

of demonstrating that there is subject matter jurisdiction in this case by a preponderance of the

evidence. *Scelsa v. City Univ. of New York*, 76 F.3d 37, 40 (2d Cir.1996); *Malik v. Meissner*, 82

F.3d 560, 562 (2d Cir.1996).

**II.**      **Substantive and Procedural Due Process**

The Fourteenth Amendment provides, in relevant part, that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to demonstrate a violation of either substantive or procedural due process rights, the plaintiff must first demonstrate the possession of a federally protected property right to the relief sought. *Puckett v. City of Glen Cove*, 631 F.Supp.2d 226, 236 (E.D.N.Y. 2009) (citing *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)).  A procedural due process inquiry entails two elements: (1) whether there is a constitutionally protected property or liberty interest; and (2) whether the process afforded was adequate.  *Rotundo v. Vill. of Yorkville*, 2011 WL 838892, at *8 (N.D.N.Y. 2011) (citing *Ford Motor Credit Co. v. N.Y.C. Police Dep't*, 503 F.3d 186, 191 (2d Cir. 2007)). Whether a protectable property interest exists is a question of state law.  *Gavlak v. Town of Somers*, 2005 WL 1828750, at *3 (D.Conn. 2005) (a nonconforming use is a vested property right in the state of Connecticut).  In New York, it is well established that a nonconforming use that predates the enactment of a restrictive zoning ordinance is a vested right entitled to constitutional protection.  *Norton v. Town of Islip*, 239 F.Supp.2d 264, 270 (E.D.N.Y. 2003) (citing *Town of Somers v. Camarco*, 308 N.Y. 537, 541 (N.Y. 1955)); *see also Keller v. Haller*, 226 A.D.2d 639 (2d Dep't 1996).

To establish a substantive due process violation, a plaintiff must demonstrate that: (1) there is a valid property interest; and (2) defendants infringed on that property right in an arbitrary or irrational manner. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007).  A decision can only be considered arbitrary where it had no basis in fact.  *Gavlak*, 2005 WL 1828750, at *3 (citing *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999)).  Plaintiff must establish that the government action transgresses "the outer limit" of legitimate government action and that the officials actions were "shocking, abusive, capricious or arbitrary".  *Cathedral*

16

*Church of the Intercessor v. Inc. Vill. of Malverne*, 353 F.Supp.2d 375, 385 (E.D.N.Y.2005).  A zoning board's action can be characterized as arbitrary or irrational "only when the government acts with 'no legitimate reason for its decision' ".  *Crowley v. Courville*, 76 F.3d 47, 52 (2nd Cir. 1996) (internal citations omitted).

A.      **Collateral Estoppel**

Defendants argue that plaintiffs are collaterally estopped from asserting substantive and procedural due process claims because the Cortland Court previously found that plaintiffs "had no vested rights that were affected by the amendments [the Ordinance], which were properly applied to the project".  Plaintiffs disagree and claim that Judge Rumsey's ruling pertained to plaintiffs' permit applications which involved conversion of a single-family residence to two-dwelling units, each with more than four bedrooms which required special use/Series A site plan approval. Plaintiffs contend that Judge Rumsey's decision did not address plaintiffs' applications for conversions of units with no more than four bedrooms, which are permitted by "as of right".

The doctrine of collateral estoppel or issue preclusion applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding, and the issue has been necessarily decided in the prior action, is decisive of the present action, and the litigant had a full and fair opportunity in the prior action to contest the decision.  *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996) (citing *Schwartz v. Pub. Admin. Of County of Bronx*, 24 N.Y.2d 65, 71 (1969)).  Courts have held that the doctrine of collateral estoppel can be relied on as a bar in § 1983 actions to preclude relitigating issues previously decided in an Article 78 proceeding.  *See Robinson v. Scully*, 1993 WL 340998, at *4 (S.D.N.Y. 1993) ("Although a § 1983 claim for damages is not barred by a judgment in an Article 78 proceeding, a federal plaintiff nonetheless may still be barred by the doctrine of collateral estoppel or issue preclusion from relitigating

17

issues that were determined in that proceeding"); *see also Ellentuck v. Klein*, 570 F.2d 414 (2d Cir. 1978) (property owners due process claims relating to a variance were barred by collateral estoppel as state court decided the due process issues in an Article 78 proceeding and the owners failed to seek review of the adverse judgment).

The party asserting issue preclusion bears the burden of showing that the identical issue was decided in the prior proceeding. Identity of issue, "requires a showing that the issue to be decided in the second action is material to the first action or proceeding and essential to the decision rendered therein, . . . such that 'a different judgment in the second would destroy or impair rights or interests established by the first' ". *Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp*., 250 N.Y. 304, 307 (1929)). The party opposing issue preclusion bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding. *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir.1995) (citation omitted). To determine whether a party was provided a full and fair opportunity to litigate, the Court must consider: "the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation." *Johnson v. McClure*, 2009 WL 2356147, at *7 (N.D.N.Y. 2009) (citations omitted). "[T]he basic concern is one of fairness." *Cruz v. Root*, 932 F.Supp. 66, 68 (W.D.N.Y. 1996).

Here, defendants' argue that collateral estoppel applies and rely upon Judge Rumsey's holdings and dicta in the October 2011 Order. Defendants contend that Judge Rumsey necessarily decided the issue central to, or identical to, plaintiffs' due process claims herein. To wit, that plaintiffs did not possess a "vested property interest". Thus, defendants' argue that plaintiffs are precluded from asserting any claims for due process violations with respect to 31

Seminary Avenue and 26 Seminary Avenue.  After conducting a thorough review of Judge Rumsey's decision in comparison with plaintiffs' property rights involving 31 Seminary Avenue as distinguished from plaintiffs' property rights in 26 Seminary Avenue, the Court finds that defendants are only partially correct.

  1.      **31 Seminary Avenue**

     In the introductory paragraphs of the October 2011 Order, Judge Rumsey specifically addressed the property located at 31 Seminary Avenue and plaintiffs' applications for work at that location.   In the discussion of plaintiffs' due process claims, Judge Rumsey confined his analysis to the property at 31 Seminary Avenue.  Judge Rumsey noted that the property was purchased in January 2009 and the applications for permits for the property were filed in April 2009.  Judge Rumsey concluded, based upon the date of the amendments to the Ordinance, that plaintiffs had no vested property interest in 31 Seminary Avenue.  Thus, the Court held that the proposed due process claims "lacked merit" and dismissed the claims "with prejudice".

     Plaintiffs argue that defendants have not established "identity of issues" because Judge Rumsey did not address plaintiffs' applications for conversions that are permitted "as of right". While plaintiffs' attempt to "pare down" Judge Rumsey's ruling, Judge Rumsey made no such distinction.  Plaintiffs' inferences and assumptions are not supported by the language of the October 2011 Order.  Moreover, plaintiffs' arguments are belied by the pleadings.  "[F]or a question to have been actually litigated so as to satisfy the identity requirement, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *Linden Airport Mgmt Corp. v. New York City Econ. Dev. Corp.*,  2011 WL 2226625, at *6 (S.D.N.Y. 2011) (citations omitted) (the Article 78 Petition and Amended Complaint included substantially "verbatim" allegations); *see also Evans v. Ottimo*, 469 F.3d 278,

282 (2d Cir. 2006) (a comparison of the Article 78 Petition and the Amended Complaint makes clear that identical issues are "properly raised by the pleadings."). The Court has thoroughly reviewed plaintiffs' allegations in the Second Amended Petition and compared the claims to the complaint. The factual history and allegations are nearly identical. Paragraphs 29 through 49 of the Second Amended Petition are reiterated, in some instances, verbatim, in Paragraphs 58 through 80 of the complaint herein. Based upon the allegations in the Second Amended Petition and Judge Rumsey's holding, the Court finds that the issues are presented in plaintiffs' substantive and procedural due process claims with respect to 31 Seminary Avenue were necessarily decided in the Cortland County action. A different conclusion by this Court would destroy or impair rights or interests established by the first action.

To avoid the impact of collateral estoppel with regard to the due process claims pertaining to 31 Seminary Avenue, plaintiffs must prove that they were not afforded a full and fair opportunity to litigate this issue in the Cortland County action. However, in response to defendants' motion, plaintiffs fail to address this issue or present any argument in support. The Court has reviewed the Cortland County documents and notes that plaintiffs were represented by counsel, requested a preliminary injunction and were afforded two opportunities to amend their petition. Plaintiffs have failed to come forth with any evidence establishing that they were not afforded a fair opportunity in state court. Thus, the doctrine of collateral estoppel bars re-litigation of the issue of whether plaintiffs' due process rights were violated with respect to 31 Seminary Avenue.

**2.      26 Seminary Avenue**

The Court reaches a different conclusion with respect to plaintiffs' due process claims involving 26 Seminary Avenue. The property at 26 Seminary Avenue is not described or

mentioned in Judge Rumsey's decision, in any respect.  Indeed, in his analysis of plaintiffs' due process claims, Judge Rumsey discussed plaintiffs' purchase and applications for permits with respect to 31 Seminary <u>only</u>.  Upon review of the Cortland County decision, this Court cannot conclude that the Cortland Court made any determination with regard to plaintiffs' property interest at 26 Seminary Avenue in the due process context.  While defendants' assert various arguments regarding plaintiffs' "grandfathered" property interests at 26 Seminary Avenue, those arguments were not discussed nor decided by Judge Rumsey.  In this context, defendants rely almost exclusively upon factual arguments that are not in proper evidentiary form and beyond the scope of this Court's review on a motion to dismiss.  Defendants' conclusory assertions fail to establish the necessary "identity of issues" to invoke collateral estoppel with respect to plaintiffs' due process claims involving 26 Seminary Avenue.  Accordingly, defendants' motion to dismiss plaintiff's due process claims with respect to 26 Seminary Avenue is denied.

**B.      Availability of Article 78 Proceeding**

In the alternative, defendants argue that plaintiffs' procedural due process claims must be dismissed because the Article 78 proceedings provided adequate remedies.  Plaintiffs disagree and claim that administrative remedies need not be exhausted because the constitutional deprivations were caused by the unlawful enforcement of policies and practices and thus, the availability of post-deprivation remedies does not bar the claim herein.

When reviewing alleged procedural due process violations, the Supreme Court has distinguished between: (a) claims based on established state procedures; and (b) claims based on random, unauthorized acts by state employees.  *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 880 (2d Cir. 1996) (citations omitted).  If the alleged deprivation is caused by random, unauthorized state conduct and an adequate post-deprivation hearing is

available, there is no denial of "due process", and therefore, no constitutional violation on which to base a § 1983 claim. *Kirk v New York State Office of Cmty Renewal*, 2011 WL 294230, at *9 (N.D.N.Y. 2011) (citing *Parratt v. Taylor*, 451 U.S. 527, 543 (1981)); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984). When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post deprivation procedures will not, ipso facto, satisfy due process. *Hellenic Am. Neighborhood*, 101 F.3d at 877; *see also DeMasi v. Benefico,* 567 F.Supp.2d 449, 455 (S.D.N.Y. 2008) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433-37 (1982) (holding that post-deprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action)).

The issue of whether an Article 78 proceeding under New York law provided adequate remedy is not properly resolved on motion to dismiss. *Fishman v. Daines*, 743 F.Supp.2d 127 (E.D.N.Y. 2010). Here, plaintiffs claim that the deprivation was caused by defendants' enforcement of unlawful policy and not the random, unauthorized acts of state employees. Defendants offer no argument or evidence to dispute that claim. At this stage of the litigation, plaintiffs have sufficiently stated a claim that defendants deprived them of due process with respect to the property at 26 Seminary Avenue to survive a motion to dismiss on this issue. *See Oladokun v. Ryan*, 2007 WL 3125317, at *4-5 (S.D.N.Y. 2007) (on a motion to dismiss, despite conflicting accounts of the events, the plaintiff adequately alleged that highranking officials failed to provide the plaintiff with adequate process). Accordingly, defendants' motion to dismiss plaintiffs' procedural due process claims, on this basis, is denied.

**C.      Second Cause of Action  - Facial Challenge to Ordinance for Vagueness**

Plaintiffs claim that the unconstitutional application and enforcement of the Ordinance violates their Fourteenth Amendment right to due process.  Defendants move to dismiss arguing that the Ordinance provides fair warning of the projects that must be reviewed and the standards applied during the review.

"Ordinances may be void for vagueness if their prohibitions are not clearly defined to provide fair warning and prevent 'unrestricted delegations of power which facilitate arbitrary and discriminatory enforcement' ".  *Ruston v. Town Bd. for Town of Skaneateles*, 2009 WL 3199194, at *7 (N.D.N.Y. 2009) (citing *ABN 51st St. Partners v. City of N.Y.*, 724 F.Supp. 1142, 1147 (S.D.N.Y. 1989)).  The Supreme Court has held:

> If arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters (to officials) . . . for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).  In resolving a vagueness challenge, a court must determine whether a plaintiff was put on adequate notice of the behavior required under the respective ordinance, and whether the ordinance encourages arbitrary enforcement. *Cunney v. Bd. of Tr. of Vill. of Grand View, N.Y.*, 660 F.3d 612, 621 (2d Cir. 2011).  When reviewing the statute's language, the Court should consider, "the words of the ordinance itself; the interpretations the court has given to analogous statutes; and to the interpretation of the statute given by those charged with enforcing it".  *JWJ Indus., Inc. v. Oswego County*, 795 F.Supp.2d 211, 215 (N.D.N.Y. 2011) (citing *VIP of Berlin, LLC. v Town of Berlin*, 593 F.3d 179, 186-87 (2d Cir. 2010)).  As to notice, the statute satisfies due process if a "reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, has fair warning of what the regulations require.  *Cunney*, 660

F.3d at 621.  "The second ground for determining unconstitutional vagueness—whether the ordinance fails to 'provide explicit standards for those who apply [it],' involves an inquiry into whether: (1) the '[the ordinance] as a general matter provides sufficiently clear standards to eliminate the risk of arbitrary enforcement; or (2) even in the absence of such standards, the conduct at issue falls within the core of the [ordinance's] prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the [ordinance]' ".  *Id.* at 622 (internal citations omitted)

In this matter, plaintiffs argue that the Ordinance fails to give specific notice because Sections 410-27(B)(1)(a) and 410-36(A) are in direct conflict.  Plaintiffs argue that Section 410-27 allows for conversions from one to two units with up to four bedrooms as of right, however, Section 410-36(A) requires Series A Site Plan approval for all "changes of use".  Moreover, plaintiffs argue that "change of use" is undefined.  Plaintiffs contend that due to the aforementioned inconsistencies and contradictions, the Ordinance provides no objective standard and encourages defendants to arbitrarily reject applications.

In the complaint, plaintiffs provide examples of what they perceive to be defendants various interpretations of "change of use":

> On May 5, 2009, Supervisor Chadwick informed Levin that the Building Permit Application was denied on the grounds that, under the Ordinance, a change of "occupancy" from a one-unit to a two-unit dwelling was deemed a change of "use" requiring Series A Site Plan approval from the Planning Commission.

> On June 17, 2009, 33 LLC filed another building permit application for a conversion from a single-unit dwelling to a two-unit dwelling with four (4) bedrooms per dwelling, which is permitted as-of-right under the Ordinance.  By letter dated June 29, 2009, Supervisor Chadwick denied the June 17 application and, once again, classified

> the proposed conversion as a change of "use", triggering the Special
> Use Permit/Series A Site Plan Review requirements of the Ordinance.

Cmplt. at ¶ 62, 66.

Plaintiffs also cite to the December 1, 2009 Zoning Board of Appeals hearing and the members' discussion of plaintiffs' application for an interpretation of change of "use" versus "occupancy".  Plaintiffs allege that during the hearing, the Board members offered different opinions stating that "use was a subset of occupancy"; "occupancy is a subset of use" and , "to me . . . it's a change of use".  Moreover, plaintiffs claim that the Board refused to consider plaintiffs' submissions that established that a change of occupants is not a change of use.  *Id.* at 90-95.   To wit, plaintiffs claim that they submitted evidence from other cities including New York City, Albany and Beekman, that define the change of number of occupants as a change of occupancy rather than a change of use.

At this stage of the litigation, plaintiffs have sufficiently alleged that the Ordinance contains provisions that appear to be conflicting.  Further, plaintiffs have adequately plead that the contradictory definitions of change of use versus occupancy create "shortcomings" and "fail to give a permit applicant specific notice of how to design the site plan so that the building complies with the Ordinance".  *See Cunney*, 660 F.3d at 621.  The alleged statements from various defendants regarding the definition of change of use demonstrate vagueness and the potential for arbitrary enforcement of the Ordinance.  *Id.* (the Zoning Board's lack of consensus with regard to the phrase "any given point above River Road" and the Board's refusal to address the plaintiff and his engineer's questions, indicated that the ordinance's vagueness authorizes arbitrary enforcement).  Based upon a more fully developed record, plaintiffs' vagueness claim may be legally deficient, however, at this juncture plaintiffs have adequately plead facts to

establish a claim that the Ordinance is unconstitutionally vague.   Accordingly, defendants'

motion to dismiss on this basis is denied.

**III.     Res Judicata**

In the alternative, defendants argue that plaintiffs' due process claims and second cause of

action are precluded based upon res judicata.  "Res judicata bars successive litigation of all claims

based upon the same transaction or series of connected transactions."  *Sheffield v. Sheriff of the*

*Rockland County Sheriff Dep't*, 393 F. App'x 808, 811 (2d Cir. 2010).  In order "[t]o demonstrate

that a claim is precluded based upon res judicata, the moving party must show [the following]: (1)

the previous action involved an adjudication on the merits; (2) the previous action involved the

parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or

could have been, raised in the prior action."  *Murtaugh v. New York*, 810 F.Supp.2d 446, 485

(N.D.N.Y. 2011) (citing, *inter alia, Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d

Cir. 2000)).   The burden rests on the party asserting the defense of res judicata to show the

existence of a prior judgment on the merits.  *Hell's Kitchen Neighborhood Ass'n v. Bloomberg*,

2007 WL 3254393, at *3 (S.D.N.Y. 2007) (citing *Miller Mfg. Co. v. Zeiler*, 45 N.Y.2d 956, 958

(1978)).  It is well settled that New York courts would not bar an action seeking damages for a

violation of civil rights based on a prior action brought pursuant to Article 78 because the full

measure of relief sought by a civil rights plaintiff is not available in the context of an Article 78

proceeding.  *Antonsen v. Ward*, 943 F.2d 198 (2d Cir.1991); *Colon v. Coughlin*, 58 F.3d at 870.

Defendants claim that the Broome and Cortland County Courts previously adjudicated

plaintiffs' due process and vagueness claims and therefore, plaintiffs are barred from relitigating

the issues.  Defendants argue that the Broome County action and the Cortland County action are

"hybrid" Article 78 proceedings because the actions included a plenary action for monetary

damages.  The "hybrid' Article 78 proceeding and plenary action, established by the Appellate Division, Second Department, is created when the Court converts an Article 78 proceeding to a cause of action that can raise a plethora of other issues.  *New York State Assemblyman Powell v. City of New York*,  2007 WL 2108133, at *3(N.Y.Sup. 2007) (*Heimbach v. Mills*, 54 A.D.2d 982 (2d Dep't 1976)).  As previously noted, the Court may take judicial notice of prior court decisions.  *Conopco, Inc. v. Roll, Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

## A.    Broome County

The Broome County action involved the property located at 31 Seminary Avenue only. Therefore, regardless of how the action is defined (as a "hybrid" or Article 78 proceeding), the Broome County Court decision has no bearing on plaintiffs' due process claims involving 26 Seminary Avenue.

In the Broome County action, plaintiffs asserted claims relating to:  (1) ultra vires; (2) a facial challenge regarding the definition of "change of use"; (3) the "takings" clause; and (4) equal protection.  In this action, plaintiffs have not asserted ultra vires claims nor have they alleged a cause of action based upon the "takings" clause.  Further, defendants have not asserted that res judicata bars the equal protection claims.  Thus, the only issue before this Court is whether plaintiffs are precluded, based upon res judicata and the decision in the Broome County action, from asserting the claim that the Ordinance is void for vagueness.

The Broome County Court did not specifically address plaintiffs' vagueness claim because plaintiffs' did not specifically assert such a claim.  Rather, plaintiffs disputed the Zoning Board's interpretation of "change of use".  However, the Court dismissed that claim based upon petitioner's failure to exhaust administrative remedies:

> Under City of Binghamton Code 410-92, the Zoning Board of Appeals has the initial authority to rule on such interpretations.  If the

> petitioner disagrees with that ruling, it is then free to bring an action
> in Supreme Court (where it will be disturbed only if it is found to be
> arbitrary and capricious).   In this case, petitioners did not seek ZBA
> review, but instead raised this issue of interpretation for the first time
> in its Article 78 proceeding.   This the petitioners cannot do.   They
> have to exhaust their administrative remedies.

A state court dismissal for failure to exhaust administrative remedies is presumed to be without prejudice, and therefore, it can have no res judicata effect.  *See Criales v. Am. Airlines*, 105 F.3d 93, 95 (2d Cir. 1997).   Accordingly, the decision in the Broome County action does not preclude plaintiffs' claims that the Ordinance is unconstitutionally vague.[20]

## B.     Cortland County

Defendants claim that the Cortland Court dismissed plaintiffs' claims "after converting the Article 78 proceeding to an action".   Thus, defendants argue that res judicata precludes plaintiffs from relitigating the vagueness claims and due process claims.   Plaintiffs concede that the Cortland court converted plaintiffs' equal protection claim to an action but argue that the due process claims were dismissed in the context of the Article 78 proceeding and the remaining claims were dismissed as untimely and thus, "not a ruling on the merits".

### 1.      Dismissal of Claims as Time-Barred

The Cortland Court dismissed plaintiffs' challenges to following determinations as "time barred": (1) the Planning Commissions August 12, 2010 decision; (2) the ZBA's December 1, 2009 determination regarding the definition of "change of use" ; and (3) the ZBA's January 13, 2010 denial of plaintiff's request for an area variance.   In the ordering paragraph, Judge Rumsey noted that these claims were "dismissed, with prejudice".   "A dismissal 'with prejudice' generally signifies that the court intended to bring the action to a final conclusion against the

---

[20] The Court makes no determination with regard to whether the Broome County action is a "hybrid" Article 78 proceeding.

plaintiff and courts have used the phrase interchangeably with 'on the merits' to indicate preclusive effect. *Hell's Kitchen Neighborhood Ass'n*, 2007 WL 3254393, at *6. However, dismissal "with prejudice" is not always a decision on the merits for res judicata purposes. *Id.* *(citing Yonkers Contracting Co., Inc. v. Port Auth. Trans-Hudson Corp.*, 93 N.Y.2d 375, 380 (1999)); *Pricaspian Development Corp. (Texas) v. Royal Dutch Shell*, 2009 WL 1564110, at *7 (S.D.N.Y. 2009) (the Second Circuit holds that "a district court's dismissal of claims as time-barred is not necessarily the type of merits decision that has preclusive effect in subsequent litigation.") (citing *Smith v. Woosley*, 399 F.3d 428, 434-35 (2d Cir. 2005).

Here, the Court has not been provided with a complete record of the Cortland County action and therefore, is unable to consider whether these claims are barred by res judicata. These claims are discussed at pages seven through nine of Judge Rumsey's Order. While the aforementioned claims were dismissed as "time barred", this Court is unable to determine the exact nature of said claims. In the paragraphs discussing these claims, Judge Rumsey cites to several documents that are not part of the record herein, including the following: (1) the "amended petition"; (2) exhibits annexed to the "amended petition"; (3) the "Seachrist Affidavit"; and (4) transcript of Planning Commission Meeting of February 1, 2010. Based upon the numerous claims asserted by plaintiffs in this action and the sparse record of the Cortland County action, this Court cannot, at this juncture, determine whether Judge Rumsey's holding has a preclusive effect barring plaintiffs' prosecution of these claims in federal court. *See Hell's Kitchen*, 2007 WL 3254393, at *6.

### 2. CPLR § 103

CPLR § 103(c) provides:

> Improper form. If a court has obtained jurisdiction over the parties, a
> civil judicial proceeding shall not be dismissed solely because it is not

> brought in the proper form, but the court shall make whatever order is required for its proper prosecution. If the court finds it appropriate in the interests of justice, it may convert a motion into a special proceeding, or vice-versa, upon such terms as may be just, including the payment of fees and costs.

In the absence of [CPLR] section 103(c), a claim brought as a civil action where the proper form was a special proceeding, or vice versa, would be subject to dismissal simply because the form was improper. *Davidson v . Capuano*, 792 F.2d 275, 281 (2d Cir. 1986). Section 103(c) allows a court to convert an action incorrectly brought as an Article 78 special proceeding into its proper form. *Id*.

Judge Rumsey, relying upon CPLR § 103(c), held:

> Based on the foregoing, it is ORDERED AND ADJUDGED that:
>
> 1.    Petitioners' motion to amend is granted to the limited extent of permitting them to assert their claim for damages and attorneys' fees pursuant to 42 USC § 1983, based on selective enforcement of the law, and converting the claim to an action (see CPLR 103c); it is otherwise denied.
>
> 2.    All of other claims, causes of action and demands for relief - whether asserted in the petition, the amended petition or the second amended petition - are hereby dismissed with prejudice. Accordingly, the only claim remaining at issue in this action is the selective enforcement claim.

Judge Rumsey's Order amended the caption and further ordered that the "second amended petition shall be deemed the complaint, which shall be deemed to have been served on all defendants when a copy of this decision, order and judgment, with notice of entry, is served upon their counsel".

As discussed in Part IIA, plaintiffs are precluded from relitigating due process claims relating to 31 Seminary Avenue based upon collateral estoppel. Accordingly, the question of whether these claims are barred by res judicata is redundant. Moreover, as this Court also noted

in Part IIA, Judge Rumsey's Order did not address the property at 26 Seminary Avenue, thus res judicata does not preclude plaintiffs from asserting due process claims with respect to 26 Seminary Avenue in the present action.

With respect to plaintiffs' remaining "claims" asserted in the Cortland action, as noted, the record with regard to the Cortland County action is incomplete.  This Court will not attempt to "dissect" Judge Rumsey's language to discern whether Judge Rumsey intended to dismiss plaintiffs' remaining claims "before or after"  converting the Article 78 proceeding to a civil action.  On a motion to dismiss, the Court must view all evidence in a light most favorable to plaintiffs.  At this juncture, the Court cannot conclude, as a matter of law, that plaintiffs are barred  from relitigating any claims based upon decisions rendered in the prior proceeding in Cortland County.[21]

## IV.    Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  An equal protection claim may be pled as a selective enforcement claim or a "class of one" claim.  In this matter, plaintiffs argue that the equal protection claims are sufficiently plead under both theories.  Despite the classification, both theories require a plaintiff to establish and identify similarly situated individuals or comparators. *Kamholtz v. Yates County*, 350 F. App'x 589 (2d Cir. 2009).

In the complaint, plaintiffs identify two properties and set forth the following allegations:

<u>46 Seminary</u>

---

[21] The Court makes no determination with respect to whether the Cortland County action constitutes as "hybrid" Article 78 proceeding.

On February 14, 2010, Brian Kasmarcik purchased the real property located at 46 Seminary Avenue in Binghamton for $20,000 - nearly one year after the Ordinance was enacted.  Like 26 Seminary, 46 Seminary is in an R-3 Zone.

For thirty years, 46 Seminary - a non-conforming commercial building - was known as "Wagner's Bakery".  The bakery discontinued operations in 2008.

Kasmarcik applied to the Planning Commission and Zoning Board for a use variance to convert the property to a restaurant and take-out facility - a use that was not permitted in an R-3 zone.  Kasmarcik also applied for an area variance for parking because the driveway for off-street parking was not sufficiently wide and a conversion required eight parking spaces, while only four were provided.

The site plan submitted for 46 Seminary lacked the essential elements required to establish parking for four cars because it did not provide any dimensions and a mere cursory review of the site plan reveals that the ostensible required criteria would not be met.

On April 12, 2010, Kasmarcik was granted a special use variance and area variances for this project.  Kasmarcik's application for 46 Seminary was unanimously approved in a period of 40 days.

. . . the Zoning Board concluded that the hardship at 46 Seminary was not self-created even though 46 Seminary was purchased subsequent to the enactment of the Ordinance.  The Zoning Board further concluded that the owners of 46 Seminary did not have reasonable alternatives, even though an array of alternatives were proposed for 26 LLC's property at 26 Seminary.

<u>63 Front Street</u>

The owners of the property located at 63 Front Street, a mixed-use property, submitted an application for a Special Use Permit and Series A Site Plan to convert the property to a fraternity/sorority house.  The application was for a conversion of commercial space and two residential units, substantially similar in nature to 26 Seminary, to a commercial and two to three residential units with eight bedrooms. This proposed conversion would require five parking spaces, while the property only provided for two spaces except that, according to the owners, the property could provide four spaces.

. . . the applications of the owners of 63 Front Street were unanimously approved within a period of approximately 30 days.

32

The fact that the City Code parking requirements were not met did not delay the application.   The Planning Commission approved the application of 63 Front Street on the condition that, "a formal lease agreement for one off-street parking space, located within 500 feet of the subject property, which continues in perpetuity with the use of the fraternity/sorority house at the subject property be recorded with Broome County, and a copy of said agreement be submitted to Planning Staff".

The disparate treatment of plaintiffs is further demonstrated by a review of the site plan submitted with the application of 63 Front Street by Karen and Anthony Galinari.  On June 11, 2010, the project was granted a special use permit.  The site plan shows four cars parked in tandem, which means that the drivers of cars one and four, upon exiting from the driver's seat, will hit a wall and be forced to exit from the passenger's side.  Furthermore, measurement of the width of the parking area reveals that it is only 20-feet wide.

None of the conditions required by the City Code with respect to parking . . . could be satisfied.  In fact, the site plan is not feasible as presented and would require that the laws of physics be suspended to allow this plan to operate as presented.

63 Front Street is currently the Theta Delta Chi fraternity house at Binghamton University.

## A.      "Class of One"

To establish a "class of one" theory, plaintiffs must show that:  "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."  *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir.2010) (quotation and footnote omitted). The plaintiff's burden on a "class of one" claim is "extremely high," and a plaintiff cannot prevail absent a *prima facie* showing that he is "identical in all relevant respects" to the individuals with whom he compares himself. " *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir.2005), *overruled on other grounds,*

*Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). A plaintiff must allege facts showing that he is similarly situated to other persons with respect to the specific incident or incidents that are alleged to be examples of differential treatment. *Missere*, 2011 WL 6030665, at *10 (citation omitted). The Supreme Court has held that general allegations that would previously have overcome a motion to dismiss on a "class of one" equal protection claim are no longer sufficient. *Ruston*, 610, F.3d at 58 (differences in standards set forth in *DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir.2003) and *Iqbal*, 129 S.Ct. at 1950)).

At the motion to dismiss stage, a court must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated. Thus, "[w]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim." *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills,* 815 F.Supp.2d 679, 698 (S.D.N.Y. 2011).

At this stage, plaintiff has sufficiently plead a "class of one claim". Class of one claims have arisen in cases involving enforcement of zoning regulations when an individual is denied a permit while other individuals who are similarly situated have been granted that benefit. *Caldarola v. Town of Smithtown*, 2010 WL 6442698, at *10 (E.D.N.Y. 2010). Plaintiff has identified two "similarly situated" comparators and cited to specific examples of applications made by the owners of 46 Seminary and 63 Front Street to allow the Court, and defendants, to compare plaintiffs. Defendants concede that plaintiffs' projects and 46 Seminary Avenue, "both were required to undergo site plan review and obtain variances from the ZBA". However,

defendants claim that the proposed "similarly situated" projects reduced the density and/or intensity of use while plaintiffs' projects increased the number of dwelling units/bedrooms. Defendants place too onerous a burden upon plaintiffs at the pleading stage.  *See Mosdos*, 815 F.Supp.2d at 698 ("[the] defendants have decided that the relevant factors that must be similar are types of land use, project density, zoning of the site, the surrounding zoning, and the environmental review but have not explained how they determined that this was the appropriate list of factors, or why all of these factors must be similar for the Court to determine at this stage that the comparators are sufficiently similar . . . to satisfy the *Twombly* plausibility standard").

Accepting the allegations as true and viewing them most favorably to plaintiffs, the complaint sufficiently alleges that plaintiffs' property was treated differently than its neighboring properties which, in light of the pertinent characteristics at issue here, can be considered similarly situated.  *Bayou Fleet Partnership, LLC v. St. Charles Parish,* 2011 WL 2680686, at *4 (E.D.La. 2011) (the plaintiff asserted that the neighboring property was used for the same purposes as the plaintiff's property in the same zone but when the neighbor applied to be re-zoned, requests were granted while the plaintiff's were repeatedly denied); *see also Mosdos Chofetz Chaim, Inc*, 815 F.Supp.2d at 699 (the plaintiff's compared "apples to apples" and provided facts alleging that other projects of similarly-large size were approved and built without being challenged by the defendants to the extent that it is plausible that developments of the size alleged by the plaintiffs would have comparable impacts on water, traffic, sewer, and community character concerns). "The defendants may ultimately prevail on their assertion that the others weren't really similar, but this is in substance a denial of the complaint's factual allegations. The factual dispute cannot properly be resolved on a motion to dismiss."  *Log Creek, LLC. v. Kessler*, 717 F.Supp.2d 1239, 1243 (N.D. Fla. 2010).

With regard to the second element of a class of one claim, plaintiffs must adequately plead that any differential treatment was without a rational basis. *See Olech*, 528 U.S. at 564 (allowing equal protection claims brought by "class of one" where plaintiff alleges, *inter alia*, that "there is no rational basis for the difference in treatment"). Here, plaintiffs allege that the Ordinance grants the Planning Commission, "virtually unfettered discretionary power to arbitrarily determine which development requests would be granted and which would be denied". In this context, plaintiffs

allege that their applications, "received continued opposition by members of the Zoning Board and Planning Commission concerning every portion of their applications for well over one year". In contrast, plaintiffs argue that the applications for 46 Seminary were "never questioned" and the applications for 63 Front Street were approved within 30 days. Moreover, plaintiffs allege

> . . . the Zoning Board concluded that the hardship at 46 Seminary was not self-created even though 46 Seminary was purchased subsequent to the enactment of the Ordinance. The Zoning Board further concluded that the owners of 46 Seminary did not have reasonable alternatives, even though an array of alternatives were proposed for 26 LLC's property located at 26 Seminary. That array of alternative uses included a community garden, playground, play field, and convent - all of which are totally impractical or of greater intensity to the land than 26 LLC's proposed project.

Plaintiffs also allege that, "different standards were set for 63 Front Street, since the Planning Commission conditionally approved the application, only requiring a formal lease agreement at a later date, with no deadline specified". Moreover, plaintiffs claim that 63 Front Street's site plan was "not feasible as presented and would require that the laws of physics be suspended to allow this plan to operate as presented". However, the application for 63 Front Street was approved.

In these allegations, which must be taken as true for purposes of this motion, plaintiffs argue that even if defendants were acting within their discretion, plaintiffs still suffered from unequal treatment that was arbitrary and irrational.  *See Gupta v. S.E.C.*, 796 F.Supp.2d 503, 513 (S.D.N.Y. 2011).  Accordingly, this Court holds that the complaint alleges sufficient facts to support the second prong of the equal protection pleading requirement-that there was "no rational basis for the difference in treatment".  Accordingly, plaintiffs have properly plead a cause of action for violation of their equal protection rights under the "class of one" theory, and the Court declines to dismiss this cause of action.

**B.     Selective Enforcement**

An equal protection claim based upon selective enforcement of the law must set forth allegations that: (1) plaintiffs were "treated differently from other similarly situated" property owners, and (2) "such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Cine SK8, Inc.*, 507 F.3d at 790.

Some courts have held that the standard for "similarly situated" is more stringent in a class of one claim, therefore as plaintiffs have adequately established that they were treated differently from others similarly situated, at this stage, that element is also met for plaintiffs' selective enforcement claim.  *See Frank Sloup and Crabs Unlimited, LLC. v. Loeffler*, 745 F.Supp.2d 115, 131 (E.D.N.Y. 2010).  However, upon review of the complaint, the Court finds that plaintiffs have failed to establish the second element necessary for a selective enforcement claim.  Plaintiffs' allegations with respect to "malicious or bad faith intent to injure" are wholly conclusory.  Plaintiffs claim that defendants were, "clearly opposed to renting to students" but set forth no facts explaining how or why defendants were allegedly opposed to renting to students.

Plaintiffs also claimed that defendants performed unannounced inspections of plaintiffs' property in bad faith and issued a baseless stop-work order that resulted in damage. However, plaintiffs fail to explain Esworthy's motive. The unannounced inspection itself does not establish maliciousness or bad faith or an intent to injury plaintiffs. *See Laidlaw Energy and Envtl., Inc. v. Town of Ellicottville, New York*, 2011 WL 4954881, at *11 (W.D.N.Y. 2011) (the plaintiff's complaint was filled with allegations regarding the defendant's illicit motives but an economic interest did not equate to malicious motives nor were the allegations compatible with an intention to injure the plaintiff); *see also Missere*, 2011 WL 6030665, at *14 (the unspecified inspection of the plaintiff's property by the defendants did not demonstrate maliciousness or bad faith). Plaintiffs also allege that Levin suffered "back of the hand treatment" by the Zoning Board. Again, without more than mere conclusory allegations, this does not suffice to establish an intent to harm plaintiffs. Thus, plaintiffs have not sufficiently plead a cause of action under the theory of "selective enforcement". Accordingly, plaintiffs' equal protection claim, based upon selective enforcement, is dismissed, without prejudice, as discussed *infra*.

## V.   Leave to Amend

Plaintiffs seek leave to amend the complaint with respect to the equal protection claim in the event that defendants' motion is granted. Plaintiffs seek to include an allegation asserting that defendant Young, "acted in a retaliatory manner in denying and delaying plaintiffs' applications". Plaintiffs claim that this allegation further supports plaintiffs' equal protection claim under either a "class of one" or "selective enforcement" theory.

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a pleading shall be freely given when justice so requires. *See Livingston v. Piskor*, 215 F.R.D. 84, 85 (W.D.N.Y. 2003). "Absent evidence of undue delay, bad faith or dilatory motive on the part of

the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be

obeyed." *Monahan*, 214 F.3d at 283 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Since there is no evidence of undue prejudice to defendants or dilatory motives by

plaintiffs, the Court grants plaintiffs' motion to amend their complaint.  Plaintiffs' amended

complaint does not add any additional claims, but simply include additional facts in support of

their arguments on the equal protection claim.

## VI.    *Younger* Doctrine

Defendants argue, in the alternative, that the Court should abstain from hearing this matter

based upon the civil matter currently pending in Cortland County.  A federal court's obligation to

adjudicate claims within its jurisdiction is "virtually unflagging".  *New Orleans Pub. Serv., Inc. v.*

*Council of City of New Orleans*, 491 U.S. 350, 359 (1989) (holding that "abstention remains the

exception, not the rule").  The *Younger* doctrine "espouse[s] the policy that a federal court should

not interfere with a pending state judicial proceeding in which important state interests are at

stake".  *Wisoff v. City of Schenectady,* 2009 WL 606139, at *6 (N.D.N.Y. 2009) (citing *inter alia*

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431-432 (1982)).  In

the Second Circuit, courts applying *Younger* abstention, "must determine (1) whether there is an

ongoing state proceeding; (2) whether an important state interest is involved; and (3) whether the

federal plaintiff has an adequate opportunity for judicial review of his constitutional claims during

or after the proceeding".  *Id.*  (citing *Univ. Club v. City of New York*, 842 F.2d 37, 40 (2d Cir.

1988) (internal citations omitted)).

Plaintiffs allege that the *Younger* doctrine is inapplicable due to the January 25, 2012 Order in the Cortland County case.  The Order, which was annexed as an exhibit in opposition to defendants' motion, provides[22]:

> Upon the Notice of Motion dated January 6, 2012 and the affidavit of Brian M. Seachrist, . . . defendants moved . . . for an order staying this action during the pendency of a federal civil rights action commenced by [plaintiffs] in this action (Northern District of New York 3:11-CV-1300).  By letter dated January 23, 2012, plaintiffs' counsel advised the court that they joined in the defendants' request and motion that this action be stayed.

The Cortland County action was stayed and counsel was  directed, "to promptly advise upon settlement or disposition" of the federal action.  Based upon the January 2012 Order, there is no "pending" state court action and defendants have failed to meet the first requirement for *Younger* abstention.  *See Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 569 (1983) ("the federal courts need not defer to the state proceedings if the state courts expressly agree to stay their own consideration of the issues raised in the federal action pending disposition of that action.")   Thus, defendants' motion on this issue is denied.

## CONCLUSION

It is hereby

**ORDERED**, that defendants' motion for an order dismissing plaintiffs' substantive and procedural due process claims (Second and Third Cause of Action) as they relate to the property at 31 Seminary Avenue is **GRANTED**; and it is further

---

[22] Defendants failed to attach or reference this Order in their moving papers and failed to address the Order in their reply papers.

**ORDERED**, that defendants' motion for an order dismissing plaintiffs' substantive and procedural due process claims (Second and Third Cause of Action) as they relate to the property at 26 Seminary Avenue is **DENIED**; and it is further

**ORDERED**, that defendants' motion for an order dismissing plaintiffs' equal protection claims based upon a "class of one" theory is **DENIED**.  However, to the extent that plaintiffs attempt to assert an equal protection claim based upon "selective enforcement", defendants' motion to dismiss that claim is **GRANTED**, it is further

**ORDERED**, that defendants' motion that the Court abstain from hearing this matter pursuant to the *Younger* doctrine is **DENIED**, it is further

**ORDERED**, that plaintiff's motion for leave to amend the pleadings to assert an additional allegation related to the equal protection claim is **GRANTED**.  Plaintiffs' shall file and serve its amended complaint within fourteen days of the date of this Order in accordance with the Local Rules; and it is further

**ORDERED**, that defendants' motion to dismiss plaintiffs' remaining causes of action is otherwise **DENIED**; and it is further

**ORDERED**, that all further pretrial matters are referred to Magistrate Judge Peebles.

**IT IS SO ORDERED.**

Dated:  April 18, 2012
Albany, New York

Mae A. D'Agostino
U.S. District Judge