**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**33 SEMINARY LLC, 31 SEMINARY LLC, and**
**26 SEMINARY AVENUE PROJECT LLC,**

                                  **Plaintiffs,**

    **vs.**                                                   **3:11-CV- 1300**
                                                                **(MAD/DEP)**

**THE CITY OF BINGHAMTON, MATTHEW T.**
**RYAN, Individually and as Mayor of Binghamton,**
**KENNETH J. FRANK, Individually and as Corporation**
**Counsel of the City of Binghamton, THOMAS COSTELLO,**
**Individually and as Supervisor of Building and Construction**
**and Code Enforcement for the City of Binghamton, DAVID S.**
**CHADWICK, Individually and as Former Supervisor of**
**Building and Construction for the City of Binghamton, KEVIN**
**ESWORTHY, Individually and as former Building Inspector**
**of the City of Binghamton, JOHN STELLA, Individually and as**
**Chairman of the Planning Commission of the City of Binghamton,**
**MARK YOUNG, Individually and as Member of the Planning**
**Commission of the City of Binghamton, MICHELLE O'LOUGHLIN,**
**Individually and as Member of the Planning Commission of the City**
**of Binghamton, ROBERT POMPI, Individually and as Member**
**of the Planning Commission of the City of Binghamton, THOMAS**
**POLLACK, Individually and as Member of the Planning Commission**
**of the City of Binghamton, EARL WALKER, Individually and as**
**Member of the Planning Commission of the City of Binghamton,**
**JAMES WORHACH, Individually and as Member of the Planning**
**Commission of the City of Binghamton, KELLY LIGEIKIS, Individually**
**and as Member of the Planning Commission of the City of Binghamton,**
**JOANN MASTRONARDI, Individually and as Chairman of the**
**Zoning Board of Appeals of the City of Binghamton, VLADIMYR**
**GOUIN, Individually and as Member of the Zoning Board of Appeals**
**of the City of Binghamton, DONALD HANRAHAN, Individually**
**and as Member of the Zoning Board of Appeals of the City of**
**Binghamton, CARMAN GARUFI, Individually and as Member**
**of the Zoning Board of Appeals of the City of Binghamton, GERALD**
**O'BRIEN, Individually and as Member of the Zoning Board**
**of Appeals of the City of Binghamton.**
                                  **Defendants.**
_____

**APPEARANCES:**                                       **OF COUNSEL:**

| | |
|---|---|
| COHEN LAW GROUP, PC.<br>10 East 40th Street - 46th Floor<br>New York, New York 10016<br>*Attorneys for Plaintiffs* | Brian S. Cohen, Esq. |
| NEWMAN FERRARA LLP<br>1250 Broadway, 27th Floor<br>New York, New York 10001<br>*Attorneys for Plaintiffs* | Jeffrey M. Norton, Esq.<br>Randolph M. McLaughlin, Esq.<br>Debra S. Cohen, Esq. |
| HANCOCK ESTABROOK, LLP<br>1500 AXA Tower I<br>100 Madison Street<br>Syracuse, New York 13202<br>*Attorneys for Defendants* | Daniel B. Berman, Esq.<br>Janet D. Callahan, Esq. |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

Plaintiffs, property owners in the City of Binghamton, commenced this action pursuant to 42 U.S.C. § 1983 alleging that defendants violated their rights under the United States Constitution. Presently before the Court is plaintiffs' motion for partial summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 51). Plaintiffs seek an Order declaring Section 410-27 of the City of Binghamton's Zoning Ordinance unconstitutional. Defendants have opposed the motion. (Dkt. No. 56).

### FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 2009, 33 Seminary LLC purchased 31 Seminary Avenue ("31 Seminary"). 31 Seminary is "zoned R-2, Residential One and Two Unit Dwelling District".

On March 16, 2009, the City Council adopted, and Mayor Matthew Ryan subsequently approved, Ordinance 009-009 ("Ordinance") which amended certain sections of Chapter 410 of

the Code of the City of Binghamton ("City Code").  Chapter 410 is entitled "Zoning".  Article VI refers to Residential Districts.  Of relevance herein is Section 410.27(B) which provides:

> B.   R-2 Residential One- and Two-Unit Dwelling District.
>
> (1)   Permitted by right.
> (a)   Principal uses:
> Two-unit residences
>
> (3)   Permitted with Planning Commission approval (special use permit and Series A site plan).
>
> (1)   Principal uses:
> Conversion of dwelling Unit to More than Four Bedrooms

Section 410-5 contains definition of various terms including, *inter alia*,:

> Conversion: The changing of use or occupancy by alteration, addition or by other reorganization.
>
> Dwelling:
>
> A.   A building or portion thereof which meets the following criteria:
>
> (1)   Designed, used or intended to be used exclusively as year-around and complete living quarters for one family or household.
>
> Dwelling, One-Unit: A building or portion thereof containing no more than one dwelling.
>
> Dwelling, Two-Unit: A building or portion thereof containing no more than two dwellings; a duplex or twin.

Section 410.36 provides:

> A.   Series A Site Plan approval from the Planning Commission pursuant to 410.39 of this Article VIII is required for all new construction, for all commercial uses, for all special permitted uses, for all principal permitted and accessory uses, for all changes of use, and as required by 410.27 or 410.29 of this Chapter.  No building permit shall be issued by the Building Inspector for any use which requires site plan approval except

3

>> upon authorization of an in conformity with plans approved by the Planning Commission.
>
> B. Exceptions. Notwithstanding Subsection A of this section, no Series A Site Plan approval is required for: (i) single- and two-family dwellings and accessory uses thereto, except as may be required by 410.27 or 410.29 of this Chapter, or (ii) any change of use from one principal permitted or accessory use to another principal permitted or accessory use, including changes of use within a permitted multiple use, e.g. a shopping center, and where no exterior alterations or additions are proposed, provided the Planning Department and Building Inspector determine that the proposed change of use will not have any significant impact on:
>
> 1. Traffic volume
> 2. Site access
> 3. On-site and off-site parking
> 4. Internal circulation
> 5. Neighborhood noise levels
> 6. Green space (The proposed project will not have created a need for additional landscaping, screening, or buffering)
> 7. Drainage
> 8. Character of the neighborhood
> 9. Lighting
>
> The list of items to be considered above is inclusive, but not exclusive, and the Planning Department and Building Inspector may consider any environmental or development issues that would have a significant impact on the parcel and/or the surrounding area.

On March 24, 2009, Mayor Ryan sent a Memorandum to Council Members regarding the Ordinance stating, *inter alia:*[1]

> This memo is to address my concern that certain simple conversions do not get bogged down in the bureaucratic process and to streamline the planning commission review where they deem appropriate. It also addresses my concern that a simple conversion should not have the same permit fee as a major commercial application.

---

[1] The Memorandum is not in proper, admissible form. However, defendants dispute the statement only "to the extent that it is inconsistent with the terms or language used in the referenced Memorandum, which speaks for itself".

4

On April 8, 2009, Isaac Levin ("Levin"), a "member of 33 Seminary LLC", executed a document entitled "City of Binghamton Application" for the Department of Planning, Housing and Community Development to the Zoning Board of Appeals.[2] The application was for an "Area/Use Variance" for 31 Seminary. Under description of project, the applicant stated, "Area Variance - reduce set backs in 2 locations from 5' to 4'".

On April 14, 2009[3], John Rossi, a Master Electrician, completed a document entitled "Electrical Permit" for work at 31 Seminary.[4] The "Use of Building" is listed as "2 Family" and under the section entitled "Change of Use", the applicant circled "no". On April 29, 2009, Supervisor Chadwick ("Chadwick") signed and approved the permit.

On April 17, 2009, Levin executed a document entitled "City of Binghamton Application" for the Department of Planning, Housing and Community Development to the Planning Commission.[5] The application was for a "Site Plan Review/Special Use Permit". Under description of the project, the applicant stated: "Increase # of bedrooms from 4 per floor to 5 per floor. Total 2 floors."

On April 30, 2009, a Building Permit Application was submitted for 31 Seminary.[6] A floor plan was annexed to the application. The floor plan depicted four bedrooms.

---

[2] The application is not in proper, admissible form. Defendants dispute the statement only to the extent that the variance application "speaks for itself".

[3] The document lists the date as April 14, 2008.

[4] The permit is not in proper, admissible form. However, defendants dispute the statement only to the extent that the "referenced application speaks for itself".

[5] The application is not in proper admissible form. Defendants dispute the statement only to the extent that the Planning Commission Application "speaks for itself".

[6] The application is unsigned and not in proper, admissible form. Defendants dispute the statement only to the extent that the application "speaks for itself".

5

On May 5, 2009, Chadwick informed Levin that the Building Permit Application was denied due to a change of "use".[7] On May 6, 2009 and May 7, 2009,Chadwick received letters from Levin regarding the building permits. In the May 6, 2009 correspondence, Levin asserts:

> On April 30, 2009 an application was filed for a building permit for the following work:
>
> 1.   Erect a new wall.
> 2.   Replace roof.
> 3.   Partition floors per floor plan.
>
> It is believed that this application for a work permit was as of right of the homeowner.
>
> In the meeting yesterday with corporation counsel and the planning department of the City of Binghamton said application for a permit as denied.
>
> I was led to believe that based on the new ordinance the conversation [sic] of a one family house in a R-2 zone was no longer as of right and was in fact a change in use. Therefore, the change in use would trigger the review by the planning commission.

In the May 7, 2009 correspondence, Levin asserts:

> On May 5, homeowner's application for a building permit was denied. The denial was based on the city's assumption that the conversation [sic] of a single-family house in a R-2 zone to one of a two family house in a R-2 zone was a change in use (see 410-36).
>
> The application by the homeowner is not for a change in use but a change in occupancy and therefore 410-36, a change in use does not apply.

On May 8, 2009, Chadwick denied 33 Seminary LLC's application in a letter to Levin in which he addressed the application to "convert a single family home to a two family residence with four bedrooms per unit", stating, "[t]he conversion of a single family home to a two family residence requires site plan approval as per Section 410-36". Chadwick's letter states that

---

[7] *See* Def. Answer at ¶ 62.

6

conversion of a "single family with three bedrooms to a single bedroom [sic] with five bedrooms, this too would require site plan approval by the Planning Commission".

On May 14, 2009, the Planning Commission issued a Staff Report addressing 31 Seminary.[8] On May 14, 2009, 33 LLC submitted a modified permit application for the renovation of 31 Seminary.

On May 26, 2009, in a letter addressed to Patrick Day, a member of the Planning Board, and Chadwick, Levin advised that any applications on behalf of 33 Seminary before the Zoning Board or Planning Commission were withdrawn.  On May 26, 2009, Supervisor Chadwick informed 33 LLC, in writing, that the application was denied because, "[t]he floor plan submitted is nearly identical to the floor plan that was submitted as part of your application to the Planning Commission for a Series A Site Plan Approval.  Simply renaming the rooms does not alleviate the need for the Series A Site Plan Approval.  Please proceed with your Series A Site Plan Application".

Plaintiffs submitted another floor plan.  On June 3, 2009, Chadwick advised plaintiffs that the most recent permit application was denied.  The letter stated, "[t]he floor plan still shows a floor plan similar to a two family residence.  Please amend your plans to show that a single family residence is being proposed and built".

On June 3, 2009, plaintiffs submitted another revised floor plan.  On June 3, 2009, 33 LLC was granted a permit for "side and rear addition, new roof, interior renovation".

On June 11, 2009, plaintiffs sent a letter to Chadwick with an, "[a]pplication for a building permit to convert 'as of right' a single-family house in an R-2 zone to one of a 2 family house in a R-2 zone".  Plaintiffs also provided a floor plan for five bedrooms per floor.  On June 17, 2009,

---

[8] The report is not in proper, admissible form. Defendants dispute the statement only to the extent that the report "speaks for itself".

7

plaintiffs sent a letter to Chadwick with an, "[a]pplication for a building permit to convert 'as of right' a single-family house in an R-2 zone to one of a 2 family house in a R-2 zone" with a "floor plan for 4 bedrooms per floor".

On June 29, 2009, Chadwick advised plaintiffs, in writing, that "the Building Permit to convert the single family residence into a two family residence with four bedrooms in each apartment is denied". Chadwick cited to Section 410-36A which requires a Series A Site Plan approval for all "changes of use". Chadwick stated, "[y]our proposal is a change of use, you are converting the building from a single family use to a two family use".

On October 21, 2009, plaintiffs sent a letter to the Zoning Board of Appeals stating that the "change was a change in occupancy and not a change in use". Plaintiffs provided examples from the city of Portland and city of St. Paul to support their position.

On December 1, 2009, Levin appeared before the Zoning Board. According to the minutes:

> Isaac Levin appeared before the Board to provide information on his request for an interpretation regarding a proposed project to convert a single family dwelling to a two-unit dwelling at 31 Seminary Avenue. Mr. Levin requested the Board's interpretation of whether the proposed action constitutes a change of occupancy or a change of use.

During the hearing, Levin, Chairwoman Mastronardi and other individuals designated as "male voice" and "female voice" engaged in a discussion of the issues pertaining to 31 Seminary. The Zoning Board held, in a vote of 3-0, with regard to the conversion of 31 Seminary from a one-unit to a two-unit dwelling, that the Board "define the proposed action as a change of use".

On December 14, 2009, the Planning Commission conducted a hearing concerning 33 LLC's October 21, 2009 Application. The hearing was adjourned, without decision, until January

8

4, 2010.  On January 4, 2010, the Planning Commission hearing concerning 33 LLC's October 21, 2009 application continued with PCC Stella, PCM Walker, PCM Worhach, PCM O'Laughlin and member Mary Lou Conrow in attendance.  The hearing was adjourned, without decision, until February 1, 2010.  At the February 1, 2010 Planning Commission Hearing, Levin submitted a revised site plan for 31 Seminary.   The Chairwoman noted that the issue, according to the agenda, was a site plan review of the project at 31 Seminary Avenue and the proposed conversion of a single family dwelling to a five bedroom dwelling.   At the end of the hearing, a male member moved for a vote arguing that plaintiff failed to meet the "general requirements as set forth in Section 410-40 for a special permit" and that "the requirements of a 410-47 Series A site plan". The members voted unanimously in favor of the motions.

On May 17, 2010, 33 LLC filed another application for a Site Plan Review/Special Use Permit with the Planning Commission for approval of a two-unit dwelling with five bedrooms per unit.

On June 7, 2010, the Planning Commission held a public hearing on the May 17, 2010 Application.  The Chairman noted that the issue before the Commission was that plaintiffs were taking a one family home and converting it into two units.  The Chairman noted, "[a]ny dwelling unit within any residential district, which this is, must meet the definition of a family or the equivalent which is defined in the City Code."   The hearing was opened for public discussion. At the end of the hearing, plaintiffs proposed to modify the application from five bedrooms per unit to four bedrooms per unit.   The Chairman noted that the members were "unwilling" to support the compromise.   The Planning Commission indicated that it would agree to three bedrooms per unit but plaintiffs would not accept that limitation.  Plaintiffs' application was tabled until the next meeting in July 2010.

On July 19, 2010, the Planning Commission held a public hearing that ended without a resolution. On August 2, 2010, the Planning Commission denied plaintiffs' application.

On January 13, 2012, defendants filed a motion to dismiss for failure to state a claim. On April 14, 2012, the Court issued a Memorandum-Decision and Order (MDO) granting the motion, in part and denying the motion, in part. In Part IIC of the MDO, the Court addressed plaintiffs' second cause of action and constitutional challenge to the ordinance for vagueness. The Court held:

> At this stage of the litigation, plaintiffs have sufficiently alleged that the Ordinance contains provisions that appear to be conflicting. Further, plaintiffs have adequately plead that the contradictory definitions of change of use versus occupancy create "shortcomings" and "fail to give a permit applicant specific notice of how to design the site plan so that the building complies with the Ordinance". *See Cunney*, 660 F.3d at 621. The alleged statements from various defendants regarding the definition of change of use demonstrate vagueness and the potential for arbitrary enforcement of the Ordinance. *Id.* (the Zoning Board's lack of consensus with regard to the phrase "any given point above River Road" and the Board's refusal to address the plaintiff and his engineer's questions, indicated that the ordinance's vagueness authorizes arbitrary enforcement). Based upon a more fully developed record, plaintiffs' vagueness claim may be legally deficient, however, at this juncture plaintiffs have adequately plead facts to establish a claim that the Ordinance is unconstitutionally vague. Accordingly, defendants' motion to dismiss on this basis is denied.

*See 33 Seminary LLC v. City of Binghamton*, 869 F.Supp.2d 282, 303 (N.D.N.Y. 2012).

After the MDO was issued, plaintiffs filed an Amended Complaint and the parties engaged in telephone conferences with Magistrate Judge David E. Peebles to discuss discovery. On November 1, 2012, the parties advised that deposition notices had been served, but no depositions were completed. In addition, an inspection of the properties was scheduled. On July 26, 2012, at the parties request, the discovery deadline was extended until January 2013 and the dispositive motion deadline was extended until April 18, 2013. On November 20, 2012,

10

plaintiffs filed the within motion. On December 20, 2012, the parties participated in a telephone conference with Magistrate Judge Peebles. The discovery deadline was extended to February 28, 2013 and a Settlement Conference was scheduled. On January 10, 2013, a Settlement Conference was held with Magistrate Judge Peebles presiding. The parties could not resolve the matter and consequently, Magistrate Judge Peebles issued an order staying the deadlines for discovery including depositions, until this court rendered a decision on this within motion.

## DISCUSSION

### I.      Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 258 (1986). A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See id.* If the nonmovant fails to carry this burden, summary judgment is appropriate. *See id.*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712,

716 (2d Cir.1994).  No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F .3d 81, 86 (2d Cir.1996) (citing Fed.R.Civ.P. 56.  In applying this standard, the court should not weigh evidence or assess the credibility of witnesses.  *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (citation omitted).  These determinations are within the sole province of the jury.  *Id.*

## II. Opinion Evidence

Before engaging in a discussion of the merits of the present motion, the Court must address the evidentiary issue raised in plaintiffs' reply submission and addressed in sur-reply filings.  In response to defendants' opposition to the motion for summary judgment, plaintiffs provided various exhibits relating to Cheryl A. Fischer, P.E., Assistant Director for Code Interpretation for the New York State Division of Code Enforcement and Administration including, *inter alia*: (1) contact information for Fischer; (2) written and email correspondence between Fischer and Levin; and (3) email correspondence between Fischer and Thomas Costello, CEO to the City of Binghamton. Plaintiffs provided those exhibits in support of the argument that Ms. Fischer's interpretation and opinions regarding plaintiff's applications is conclusive proof that the Ordinance is void for vagueness.  Plaintiffs' attempt to introduce and rely upon Ms. Fischer's opinions and/or interpretations is improper, at this stage of the litigation.  The evidence that plaintiffs seek to admit as part of the record, i.e., written and email correspondence, is not in proper, admissible form.  The correspondence has not been authenticated by any witness either by affidavit or deposition testimony.  More importantly, plaintiffs improperly seek to introduce Ms. Fischer as an expert witness and her conclusions as an expert opinion.  Plaintiffs have not

12

designated Ms. Fischer as an expert witness and defendants have not had an opportunity to depose her with regard to her conclusions. Accordingly, the Court will not consider these submissions as part of the record on the within motion and thus, will not engage in a discussion of the merits of Ms. Fischer's opinions.

### III.    Vagueness Challenge

Fourteenth Amendment's guarantee that no state shall "deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, entitles a person to "be informed as to what [a law] commands or forbids." *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir.2007) (citing *Lanzetta v. N.J.*, 306 U.S. 451, 453 (1939)). The "void-for-vagueness" doctrine requires first that " 'laws be crafted with sufficient clarity to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" ' " and second that laws "contain 'minimal guidelines to govern law enforcement.' " *Id*. at 65–66 (quoting *Betancourt v. Bloomberg*, 448 F.3d 547, 552 (2d Cir. 2006)) (other quotation omitted); *see also Kolender v. Lawson*, 461 U.S. 352, 358 (1983); *Farid v. Ellen*, 593 F.3d 233, 240 (2d Cir.2010). A statute or rule is inadequate under the second criterion when it "fails to provide sufficiently explicit standards for those who apply it," and "impermissibly delegates basic policy matters ... for resolution on an ad hoc and subjective basis." *Farid*, 593 F.3d at 243.

"The Supreme Court has cautioned that this doctrine does not require 'meticulous specificity' from every statute." *Thibodeau*, 486 F.3d at 66 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). "The degree of vagueness that the Constitution tolerates ... depends in part on the nature of the enactment." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Economic regulations which impose civil penalties are subject to "a less strict vagueness test" than those governing constitutionally protected rights. *Id*. Where the

13

challenged statute regulates only unprotected behavior, and is not criminal in nature, then the vagueness challenge must be assessed in light of the particular facts at hand. *Ruiz v. Comm'r of Dep't of Transp. of City of New York,* 679 F.Supp. 341, 350 (S.D.N.Y. 1988). "An economic regulation imposing only civil fines is void for vagueness only if it is 'so vague and indefinite as really to be no rule or standard at all.'". *Id.* (collecting cases). "A statute may be challenged on vagueness grounds either as applied or on its face." *Thibodeau*, 486 F.3d at 67. "A facial challenge to a legislative Act is ... the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the Act would be valid." *U.S. v. Salerno*, 481 U.S. 739, 745 (1987). Here, plaintiffs challenge the ordinance as unconstitutional both facially and as applied to plaintiffs.

In the prior MDO, this Court discussed plaintiffs' claims as they relate to the constitutionality of the Ordinance:

> "Ordinances may be void for vagueness if their prohibitions are not clearly defined to provide fair warning and prevent 'unrestricted delegations of power which facilitate arbitrary and discriminatory enforcement' ". *Ruston v. Town Bd. for Town of Skaneateles*, 2009 WL 3199194, at *7 (N.D.N.Y. 2009) (citing *ABN 51st St. Partners v. City of N.Y.*, 724 F.Supp. 1142, 1147 (S.D.N.Y. 1989)). The Supreme Court has held:
>
> If arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters (to officials) . . . for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.
>
> *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).
>
> In resolving a vagueness challenge, a court must determine whether a plaintiff was put on adequate notice of the behavior required under the respective ordinance, and whether the ordinance encourages arbitrary enforcement. *Cunney v. Bd. of Tr. of Vill. of Grand View, N.Y.*, 660 F.3d 612, 621 (2d Cir. 2011). When reviewing the statute's language, the Court should consider, "the words of the ordinance

14

>itself; the interpretations the court has given to analogous statutes; and to the interpretation of the statute given by those charged with enforcing it". *JWJ Indus., Inc. v. Oswego County*, 795 F.Supp.2d 211, 215 (N.D.N.Y. 2011) (citing *VIP of Berlin, LLC. v Town of Berlin*, 593 F.3d 179, 186-87 (2d Cir. 2010)).
>
>As to notice, the statute satisfies due process if a "reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, has fair warning of what the regulations require. *Cunney*, 660 F.3d at 621. "The second ground for determining unconstitutional vagueness—whether the ordinance fails to 'provide explicit standards for those who apply [it],' involves an inquiry into whether: (1) the '[the ordinance] as a general matter provides sufficiently clear standards to eliminate the risk of arbitrary enforcement; or (2) even in the absence of such standards, the conduct at issue falls within the core of the [ordinance's] prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the [ordinance]' ". *Id.* at 622 (internal citations omitted).

*33 Seminary LLC*, at 869 F.Supp.2d at 301-02.

### A.    Notice

Plaintiffs claim that the Code does not define "change of use" and "change of occupancy" and thus plaintiffs had no notice as to what the Ordinance required to change property from a one unit to a two unit residence.

"Legislation which restricts conduct must be definite and certain . . . [i]f men of ordinary intelligence must guess at the meaning of a restriction, it is invalid." *S. E. Nichols Herkimer Corp. v. Vill. of Herkimer,* 38 A.D.2d 456, 457 (N.Y. 1972).  The Court is required to take common sense into account when applying the objective person standard of the "ordinary intelligence" test.  *People v. Hernandez,* 98 N.Y.2d 175, 181 (2002).  "Objections to vagueness ... rest on the lack of notice, and hence may be overcome in any specific case where reasonable

15

persons would know that their conduct is at risk." *Smith v. City of Albany*, 2006 WL 839525, at *6 (N.D.N.Y. 2006) (citing *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988)).

In *Smith*, this court held:

> The ordinance at issue herein contains a list of conditions including "structural instability in whole or in part, failure, inoperability or absence of adequate sanitary waste disposal, water supply, electrical, plumbing, heating and ventilating systems or facilities, vermin and insect infestation or unsanitary, dilapidated, decaying or overcrowded conditions" which may warrant emergency demolition of a structure. Contrary to plaintiff's assertions, the Court finds these standards sufficiently detailed to guide the exercise of administrative discretion. Although the prohibited severity of the conditions warranting emergency demolition is not specified in the ordinance, it is apparent from the ordinance's title and purpose that the measure is whether these conditions render a building "unsafe" or "unfit."
>
> As in *Grayned v. City of Rockford*, 408 U.S. 104, 112 (1972), we do not have here a statute which states simply that a building may be demolished if it is found to be unsafe or unfit. Rather, the City of Albany ordinance contains a list of prohibited conditions which are "easily measured," by their impact on the "direct" or "immediate" "health, safety or welfare "of the "occupants of a building or the public," both of whom are explicitly protected by the ordinance. Id. Thus, the ordinance gives "fair notice to those to whom [it] is directed." *Id.* Normally, "[a]n act will not be held invalid merely because it might have been more detailed in its provisions." *Whitfield v. Simpson*, 312 F.Supp. 889, 897 (E.D.Ill.1970). Rather, a court must construe a statute as compatible with the Constitution if it is reasonably possible to do so. *See St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 780 (1981).

*Id*.

In *People v. Hirsch*, 140 Misc.2d 881, 884 (N.Y.City Crim.Ct. 1988), the court was faced with a constitutional challenge to portions of the Administrative Code that prohibit a change in use or occupancy inconsistent with the last issued certificate of occupancy, unless or until a new certificate of occupancy has been issued for the contemplated new use. The Court held, "[i]f defendant had difficulty determining whether a use was permissible, or whether his contemplated action would have constituted a change in use, he could have examined the Zoning Resolution,

16

questioned the appropriate City agency, or consulted his attorney or architect. Nevertheless, a law is not rendered impermissibly vague merely because a prudent lay person may wish to seek expert advice or an advisory opinion before acting." *Id*.

Here, plaintiffs have not demonstrated, with competent, admissible evidence, that the challenged provisions of the ordinance were not sufficiently crafted to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited. Plaintiffs argue that "change of occupancy" is not defined anywhere in the Ordinance thereby creating confusion. However, as defendants note, the phrase "change of occupancy" is not used anywhere in the Ordinance. Over the course of a year and a half, plaintiffs filed and withdrew applications for permits for renovations and submitted floor plans and then modified floor plans seeking to convert the structure. The Court cannot find the language vague based upon confusion that plaintiffs may have manufactured. At this stage of the litigation, applying commonsense and everyday meaning, the Court cannot conclude, as a matter of law, that a person of ordinary intelligence would not understand the meaning of "change of use" as used in the Ordinance.

### B.     Explicit Enforcement Standards

Plaintiffs allege that the statements of the individual defendants regarding the definition of "change of use" demonstrates that defendants had "unfettered discretion" to engage in arbitrary enforcement. Plaintiffs rely upon the Transcripts from various City of Binghamton Zoning Board of Appeals Hearings and cite to the "different opinions" from the members of the board regarding a "change of use". The transcripts are part of the record herein, however, the majority of the statements contained within the transcripts are hearsay and do not constitute competent, admissible evidence sufficient to allow this Court to render a decision, as a matter of law, on this issue.

The transcripts contain statements from Levin, plaintiffs' attorney and some board members identified by name. However, the transcript also contains several statements from individuals labeled only as "Male Voice" and "Female Voice". These individuals have not been identified and have not submitted affidavits authenticating the statements contained within the transcripts. Thus, the Court cannot consider those statements as part of the record herein. Moreover, the Court has reviewed the transcripts and while issues relating to the number of bedrooms and units were discussed, the members also addressed other concerns relating to the applications including issues involving set-backs, the property line, parking and the roof. On the motion, plaintiffs seek to have the Court determine, as a matter of law, that confusion amongst the members of the board with regard to the definition of "change of use" or "change of occupancy" renders the Ordinance unconstitutional. This would require the Court to make assumptions regarding the board members' intent and understanding of the Ordinance. Without proper authentication of the statements in the transcript, limited discovery and no deposition testimony, the Court is unable to make that conclusion.

In the prior MDO, the Court denied defendants' motion to dismiss plaintiffs' facial challenge to the Ordinance but acknowledged that "upon a fully developed record", plaintiffs' claims may not be viable. However, the record presently before the Court contains no admissible facts to support the motion. Indeed, the record before the Court on this motion is no "more fully developed" than the record before the Court on defendants' previous motion to dismiss. No depositions have been conducted and based upon the docket, the parties have engaged in little, if any, discovery. Plaintiffs are cautioned to appreciate the "distinction" between the Rule 12(b)(6) standard and the summary judgment standard. The burden on the movant is significantly different on a motion for summary judgment. On a motion for summary judgment, plaintiffs face the

18

burden of citing to facts in the record and "must go beyond the pleadings". *See Connection Training Servs. v. City of Philadelphia*, 358 F. App'x 315, 318 (3d Cir. 2009).

Based upon the sparse record and lack of admissible evidence in support, plaintiffs' motion for partial summary judgment is DENIED.

## CONCLUSION

**IT IS HEREBY**

**ORDERED**, that plaintiffs' motion for partial summary judgment (Dkt. No. 51) is **DENIED;** and it is further

**ORDERED**, that all further pretrial matters are referred to Magistrate Judge Peebles.

**IT IS SO ORDERED.**

Dated:  June 5, 2013
        Albany, New York

_/s/ Mae A. D'Agostino_
Mae A. D'Agostino
U.S. District Judge